**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSIT CONSTRUCTORS, LP, and B&C TRANSIT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PARSONS TRANSPORTATION GROUP, INC., PENINSULA CORRIDOR JOINT POWERS BOARD, KAREN ANTION, JUANITA VIGIL, MIKE JOHNSON, MIKE SCANLON, CHARLES HARVEY, and DOES 1 through 50, inclusive, <br><br> Defendants. <br> _____/ | No. C-12-06159 DMR <br><br><br> **ORDER GRANTING DEFENDANT PARSONS TRANSPORTATION GROUP INC.'S MOTION TO DISMISS AND DENYING MOTION TO STRIKE** |

Defendant Parsons Transportation Group Inc. ("Parsons") filed a Motion to Dismiss and to Strike Portions of Plaintiffs' First Amended Complaint ("Motion") [Docket No. 18]. Parsons moves to dismiss the Fifth and Sixth Causes of Action in the First Amended Complaint ("FAC") [Docket No. 7] for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain portions of the FAC pursuant to Federal Rule of Civil Procedure 12(f). For the reasons stated below, the motion to dismiss is granted, and the motion to strike is denied.

## I. Procedural History and Background

### A. Procedural History

Plaintiffs Transit Constructors, LP ("Transit Constructors") and B&C Transit, Inc. ("B&C") (collectively, "Plaintiffs") originally filed this case in California state court on October 5, 2012. Notice of Removal of Action [Docket No. 1] at 8 (state court complaint, hereinafter "Original Complaint"). In the state court action, Parsons demurred to the complaint on the same grounds asserted in the present motion. On December 5, 2012, before the state court heard the demurrer, Defendants Peninsula Corridor Joint Powers Board (the "JPB"), Karen Antion, Juanita Vigil, Mike Johnson, Mike Johnson, and Charles Harvey removed the case to this court. On December 21, 2012, Plaintiffs filed the FAC, which is the subject of this motion to dismiss and motion to strike.

### B. Background

The facts below generally are taken from the FAC. However, Parsons has argued that some of the allegations in the FAC are bad faith attempts by Plaintiffs to revoke prior admissions made in their Original Complaint, and that the changed allegations should be disregarded. Therefore, the court will note the relevant discrepancies between the FAC and the Original Complaint.

This case concerns bidding for a public contract involving the design, procurement, and installation of a "Positive Train Control System" (the "Project") for Caltrain, the mass transit system owned by the JPB. FAC ¶ 4.

Some time in January 2011, Plaintiffs met with Parsons to discuss the possibility of providing subcontractor proposals to Parsons to perform installation work for the Project. *Id.* at ¶¶ 13-14. At this meeting and after several follow-up telephone conversations, Parsons entered into separate agreements whereby each Plaintiff agreed to submit proposals to Parsons, and Parsons agreed to (1) list each Plaintiff in its proposal to the JPB and (2) enter into a subcontract with each Plaintiff upon the JPB's award of a contract for the Project to Parsons. *Id.* at ¶ 14. Parsons listed both Plaintiffs in the bid it submitted to the JPB on January 31, 2011. *Id.* at ¶ 16. The JPB entered into a contract with Parsons for the Project on or shortly after October 6, 2011. *Id.* at ¶ 12.

At some point, Parsons substituted Plaintiffs with another subcontractor, HMS Construction. The timing of this substitution lies at the heart of this motion, for Parsons argues that pre-award

substitutions are not actionable. The Original Complaint and FAC offer different time lines for when the event occurred. In the Original Complaint, Plaintiffs appear to allege that the substitution took place before the JPB awarded the Project contract to Parsons:

> For reasons unknown to Plaintiffs, Defendants, and each of them, decided to debar Plaintiffs from work on the Project. Although Plaintiffs were listed in the original bid of Parsons and were identified as members of Parsons' team, Parsons submitted a revised bid ***on or around September 24, 2011***, substituting the name of . . . HMS Construction . . . for the names of Plaintiffs.

Original Compl. at ¶ 21 (emphasis added). Paragraph 21 then referenced an attached Exhibit A, the "original bid Form-3 [sic]" in which Plaintiffs were listed as subcontractors, and an attached Exhibit B, "a copy of the revised Form-3 [sic]" in which HMS Construction was listed as the subcontractor.[1] *Id.* Plaintiffs also alleged in their Original Complaint that "Parsons purported to substitute plaintiffs in *its final proposal* for the Project." *Id.* at ¶ 79 (emphasis added).[2]

However, in the FAC, Plaintiffs' allegations muddy the question of whether the substitution took place before or after the award of the contract. The sentence from Paragraph 21 now reads:

> For reasons unknown to Plaintiffs, Defendants, and each of them, decided to debar Plaintiffs from work on the Project. Although Plaintiffs were listed in the original bid of Parsons and were identified as members of Parsons' team, Parsons requested the substitution of Plaintiffs ***on a date unknown to Plaintiffs***, sometime after Defendant JPB opened the original proposal submitted by Defendant Parsons. Parsons requested the substitution of Plaintiffs with . . . HMS Construction.

FAC at ¶ 21 (emphasis added). The FAC does not reference or include the exhibits attached to the Original Complaint. Paragraph 79 now reads: "***Plaintiffs are informed and believe that, on a date***

---

[1] Plaintiffs offered the copies of the two Form F-3 forms attached to the Original Complaint upon information and belief. Original Compl. at ¶ 21. In Plaintiffs' Opposition to the Motion ("Opp.") and at the motion hearing on March 14, 2013, Plaintiffs' counsel stated he had received the two forms from the JPB in response to a request he had made for information pursuant to the California Public Records Act. *See* Cal. Gov. Code § 5250 et seq.; Opp. at 19. Form F-3 states that it is the "List of Proposed Subcontractors/Suppliers For Installation Related Work" for the "Design/Procure/Install A Positive Train Control System for Caltrain." Original Compl. at Exs. A, B. The upper right portion of the document indicates that the document is "Part 3 - Form F-3" of "Request for Proposals." *Id.* The word "FINAL" appears in at the top center of Exhibit B, but not on Exhibit A. *Id.* Neither Exhibit A nor Exhibit B are dated.

[2] Parsons argues that the fact that Plaintiffs originally alleged that the subcontractor substitution occurred in a *final proposal* is significant because it amounts to a concession that the substitution occurred prior to the *award* of the contract. Motion at 4.

3

*unknown to Plaintiffs*, Defendant Parsons purported to substitute Plaintiffs." FAC at ¶ 79 (emphasis added to indicate allegations changed from Original Complaint).

In both the Original Complaint and FAC, Plaintiffs allege that several other defendants "wrongfully conditioned the award of the Project contract upon Defendant Parsons breaching its contract with Plaintiffs by substituting Plaintiffs with HMS construction." Original Compl. at ¶ 110; FAC at ¶ 110.[3]

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119

---

[3] At the hearing, Parsons argued that the wording of this allegation suggests that the subcontractor substitution was a precondition of the contract award, so it necessarily occurred *before* the award.

4

(9th Cir. 2002).  In reviewing a motion to dismiss, courts may consider documents attached to the complaint. *Parks,* 51 F.3d at 1484 (citation omitted).

The Federal Rules authorize the court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  However, "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *PAE Gov't Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) (reversing district court's order striking amended complaint for allegations inconsistent with prior pleading).  This court therefore has "no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation."  *Id.* at 859.

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, see Fed.R.Civ.P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation."

*Id.* at 858-859.  Thus, "[u]nless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading."  *Id.* at 860.

"[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986); Fed. R. Evid. 201), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

5

If the court dismisses the complaint, it should grant leave to "amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir. 1990)).

### III. APPLICABLE LAW

Parsons moves to dismiss the Fifth and Sixth Causes of Action in the FAC, which assert that it violated its statutory duty pursuant to California Public Contract Code § 4107 to not substitute HMS Construction as subcontractor in place of each of the Plaintiffs without meeting certain preconditions. FAC at ¶¶ 60, 68.

The Subletting and Subcontracting Fair Practices Act ("SSFPA") is codified at California Public Contract Code §§ 4100 et seq. The California Supreme Court has noted that "[t]he purpose of the [] statute is . . . to protect the public and subcontractors from the evils attendant upon the practices of bid shopping and bid peddling subsequent to the award of the prime contract for a public facility." *S. California Acoustics Co. v. C. V. Holder, Inc.*, 71 Cal. 2d 719, 725-26 (1969). Bid shopping is the practice of using "the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids." *Id.* at 727 n.7. Bid peddling "is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job." *Id.* The statute itself states that "[t]he Legislature finds that the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements often result in poor quality of material and workmanship to the detriment of the public, deprive the public of the full benefits of fair competition among prime contractors and subcontractors, and lead to insolvencies, loss of wages to employees, and other evils." Pub. Cont. Code § 4101.

As part of the statutory scheme to regulate bid shopping, the SSFPA requires prime contractors bidding on public contracts to list in their bids "[t]he name and location of the place of business of each subcontractor who will perform work or labor or render service to the prime contractor in or about the construction of the work or improvement . . . in an amount in excess of one-half of 1 percent of the prime contractor's total bid." Pub. Cont. Code § 4104(a). In addition,

Section 4107 "limits the right of the prime contractor to make substitutions and the discretion of the awarding authority to consent to substitutions" of subcontractors. *S. California Acoustics*, 71 Cal. 2d at 726. Section 4107 reads, in pertinent part:

> A prime contractor whose bid is accepted may not:
>
> (a) Substitute a person as subcontractor in place of the subcontractor listed in the original bid, except that the awarding authority, or its duly authorized officer, may, except as otherwise provided in Section 4107.5 consent to the substitution of another person as a subcontractor in any of the following situations . . . .

Pub. Cont. Code § 4107. The statute then lists nine situations in which a subcontractor may be substituted, "all of which are keyed to the unwillingness or inability of the listed subcontractor properly to perform," *S. California Acoustics*, 71 Cal.2d at 726, or where the original listing was the result of inadvertent clerical error. Pub. Cont. Code §§ 4107(a), 4107.5 (describing time line and procedures for substituting subcontractor listed as a result of inadvertent clerical error).

The statute also describes a process through which substitutions may be made. The prime contractor may not substitute another subcontractor for the listed subcontractor, and the awarding authority may not consent to such a substitution, until the awarding authority gives notice in writing to the subcontractor of the prime contractor's request to substitute and the reasons for the request. The listed subcontractor may submit written objections, and the awarding authority may hold a hearing. Pub. Cont. Code § 4107(a).

### IV. DISCUSSION

#### A. Section 4107 Applicability to Pre-award Subcontractor Substitutions

Plaintiffs and Defendant urge two contradictory interpretations of Section 4107. Plaintiffs assert that Section 4107 operates to prohibit non-compliant *pre or post-award* substitutions of subcontractors, whereas Defendant argues that Section 4107 applies only to *post-award* substitutions.

**1. Statutory Text**

7

The preeminent canon of statutory interpretation requires this court to "presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). Thus, statutory interpretation "begins with the statutory text." *Id.* "If the statutory language is unambiguous and the statutory scheme is 'coherent and consistent,'" judicial inquiry must cease. *In re Ferrell*, 539 F.3d 1186, 1190 n. 10 (9th Cir. 2008) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "[U]nless otherwise defined, words [of a statute] will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Resorting to legislative history as an interpretive device is inappropriate if the statute is clear. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005); *accord United States v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1143-44 (9th Cir. 2008).

On its face, Section 4107 applies only to "[a] prime contractor ***whose bid is accepted*** . . . ." Pub. Cont. Code § 4107 (emphasis added). The plain meaning of this text is that the statute regulates substitutions of subcontractors by a prime contractor *after* the awarding authority has awarded the contract to that prime contractor.

Plaintiffs posit an alternative reading, namely that the California legislature used the phrase "is accepted" to distinguish between the prime bidder whose bid "is (eventually or later) accepted" and the unsuccessful prime bidders whose bids are not accepted. Plaintiffs contend that the effect of the statute is to make only the former liable for substituting subcontractors. However, Plaintiffs' tortuous interpretation of that phrase not only contradicts its plain meaning but renders it inconsistent with the remaining text of Section 4107. Section 4107's prohibitions are written in present tense such that "[a] prime contractor whose bid is accepted may not . . . (a) ***[s]ubstitute*** a person as subcontractor . . . (b) ***[p]ermit*** a subcontract to be voluntarily assigned . . . [or] (c) . . . ***sublet or subcontract*** any portion of the work . . . ." Pub. Cont. Code § 4107 (emphasis added). If the California legislature had intended the statute to operate the way Plaintiffs suggest—to make prime contractors retroactively liable *after* the bid is accepted for its subcontractor substitutions occurring *before* that acceptance—it would have phrased the prohibitions in Section 4107 in past

8

perfect tense (e.g., "A prime contractor whose bid is accepted *may not have substituted* a person as a subcontractor"). In light of the rest of Section 4107, Plaintiffs' argument that the "is accepted" term is time neutral is untenable.

Plaintiffs also point to the following language: "A prime contractor whose bid is accepted may not: (a) substitute a person as subcontractor in place of ***the subcontractor listed in the original bid*** . . . ." Pub. Cont. Code § 4107 (emphasis added). Plaintiffs argue that the inclusion of the words "the subcontractor listed in the original bid" clarifies that a subcontractor's rights vest upon the prime contractor's initial bid submission, rather than bid acceptance. Under Plaintiffs' interpretation, the statute prohibits subcontractor substitutions any time after the prime bidder submits its *first* bid. However, nothing in the statute requires this court to interpret "original bid" to mean "first bid." It is just as logical to interpret the phrase "original bid" to refer to the final version of the prime bidder's bid before the contract is awarded. In this sense, "original" is used simply to designate what the prime contractor promised to do before the award, and to differentiate that from what the prime contractor *actually* does after the award.[4]

Finally, Plaintiffs argue that other provisions of the SSFPA confirm that a subcontractor's rights vest upon submission of the first bid. In particular, Plaintiffs point to Section 4107.5. Generally, under Section 4107, all but one of the conditions that permit a subcontractor substitution relate to the inability or unwillingness of the subcontractor to perform.[5] The remaining condition, in Section 4107(a)(5), occurs when the prime contractor demonstrates to the awarding authority that the name of the subcontractor listed in the original bid was an inadvertent clerical error, but this condition is "subject to the further provisions set forth in Section 4107.5." In turn, Section 4107.5 requires that a prime contractor's claim of inadvertent clerical error in the listing of the subcontractor

---

[4] Plaintiffs raise the concern that if this court does not follow its interpretation of the term "original bid," prime contractors could easily circumvent the SSFPA by substituting the originally listed subcontractor with a straw party prior to the award and then, after the bid is accepted, to substitute new subcontractors for the straw party. The court notes that this is unlikely to happen because (1) Section 4104(a) requires prime contractors to list the names and locations of subcontractors so that they can be vetted by the awarding authority and (2) other sections of the statute police subcontracting to straw parties (*see, e.g.* Pub. Cont. Code § 4105 (prohibiting prime contractors from listing as subcontractors general contractors who will in turn sublet portions of the work in the prime contract)).

[5] Contrary to Plaintiffs' assertion, nothing in the other sections of the SSFPA to which Plaintiffs refer confirms that the prohibition on subcontractor substitution in Section 4107 vests upon submission of the original bid.

9

be made "within two working days after the time of the prime bid opening by the awarding authority." Pub. Cont. Code § 4107.5. Plaintiffs argue that the requirement in Section 4107.5 that inadvertent clerical errors be claimed within two days would be meaningless in light of Defendant's interpretation of Section 4107, which would permit subcontractor substitutions for any reason, including to correct inadvertent clerical errors, any time before the award.

Section 4107.5's time restriction does not necessarily conflict with an interpretation that Section 4107 applies only to post-award substitutions. The Section 4107.5 deadline is tied to a specific event: "the prime bid opening by the awarding authority." The term "prime bid opening" is not defined in the SSFPA, nor does it appear in any SSFPA provision outside of Section 4107.5. It is possible that Section 4107.5 embodies the California legislature's intent to provide specific instructions regarding "prime bid openings." In any event, this potential inconsistency—between Section 4107.5 and the interpretation of Section 4107 as applying only to post-award subcontractor substitutions—is not reason enough to disregard the plain meaning of Section 4107 and the long history of California court decisions, which the court discusses below.

### 2. Cases Interpreting Section 4107

In interpreting California state law, this court is "bound by decisions of the state's highest court." *In re Bartoni-Corsi Produce, Inc.*, 130 F.3d 857, 861 (9th Cir. 1997) (citation omitted). In the absence of a decision on point by the state's highest court, this court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.*

The California Supreme Court declared in 1969, six years after the passage of the SSFPA, that "[t]he purpose of the [] statute is . . . to protect the public and subcontractors from the evils attendant upon the practices of bid shopping and bid peddling ***subsequent to the award of the prime contract for a public facility***." *S. California Acoustics*, 71 Cal. 2d at 726. In fact, the *S. California Acoustics* court explicitly *rejected* the appropriateness of extending the statute's prohibitions to pre-award bid shopping:

> The statute is designed to prevent ***only bid shopping and peddling that takes place after the award of the prime contract***. The underlying reasons are clear. Subsequent to the award of the prime contract at a set price, the prime contractor may seek to drive down his own cost, and concomitantly increase his profit, by soliciting bids lower than those used in computing his prime bid. When successful this practice places a profit squeeze on subcontractors,

10

impairing their incentive and ability to perform to their best, and possibly precipitating bankruptcy in a weak subcontracting firm. Bid peddling and shopping ***prior to the award*** of the prime contract foster the same evils, but at least have the effect of passing the reduced costs on to the public in the form of lower prime contract bids.

*S. California Acoustics*, 71 Cal. 2d at 727 n.7 (emphasis added) (citations omitted).[6]

This clear statement of the scope of the SSFPA has been followed by California courts interpreting Section 4107 in the 44 years[7] since the *S. California Acoustics* decision. *See, e.g. Titan Elec.*, 160 Cal. App. 4th at 193 (Section 4107 was enacted to prevent bid shopping "after the award of a public contract") (quoting *S. California Acoustics*); *R.M. Sherman Co., Inc. v. W.R. Thomason, Inc.*, 191 Cal. App. 3d 559, 567 ("[The] requirements [of the SSFPA] rest upon the basic principle—that the public is entitled to know exactly what it is paying for when it accepts a contractor's bid, and to get exactly that unless it consents to something different. This is entirely consistent with the idea that the contracting agency has a right to investigate any proposed subcontractor, to reject the prime bid if any subcontractor is unacceptable, and to veto any proposed substitution after the bid is accepted."); *Thompson Pac. Const., Inc. v. City of Sunnyvale*, 155 Cal. App. 4th 525, 540 (2007) (quoting the above passage from *R.M. Sherman*).

Plaintiffs argue that the California Supreme Court's opinion on the applicability of the SSFPA to pre-award substitutions is dicta, since it was not necessary to the holding of the case. This much is true—the outcome of the case did not turn on whether the plaintiff had a right to bring a cause of action under Section 4107 for pre-award substitutions. However, Plaintiffs have not

---

[6] Plaintiffs suggest that the California Supreme Court misused the term "award" in footnote 7 of the *S. California Acoustics* decision, and should have clarified its holding by using more precise terms like "bid opening" and "bid submission." This court disagrees with Plaintiffs' conclusion. An award of a contract is a common occurrence in the course of bidding on a contract, not a sophisticated, rare procedure. The footnote makes amply clear that the California Supreme Court understood the meaning of the term, e.g., by noting the similar consequences of pre-award and post-award subcontractor substitution ("[b]id peddling and shopping prior to the award of the prime contract foster the same evils"). The Court nevertheless concluded that the pre-award behavior results in at least some positive consequences.

[7] Defendant argues that the absence of corrective legislation in the 44 years since the *S. California Acoustics* opinion signifies the California legislature's endorsement of *S. California Acoustics*'s holding on Section 4107. The court is not persuaded by this argument. The Supreme Court has cautioned that it is "impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the [courts'] statutory interpretation." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 186 (1994). "We walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle." *Id.* (quoting *Helvering v. Hallock,* 309 U.S. 106, 121 (1940)).

11

brought to this court's attention any cases contrary to *S. California Acoustics*, and the court did not find any such cases in its own search. This is not surprising, in light of the plain language of Section 4107, coupled with the Court's discussion in *S. California Acoustics*. None of the cases cited by Plaintiffs persuades this court to interpret Section 4107 as applying to pre-award subcontractor substitutions.

In *Valley Crest*, the City of Davis solicited bids for a project. *Valley Crest Landscape, Inc. v. City Council of the City of Davis et al*, 41 Cal. App. 4th 1432 (1996). The solicitation specifications required subcontractors to perform no more than 50% of the project work. *Id.* at 1435. The lowest bidder, North Bay, submitted an initial bid in which subcontractors would perform over 80% of the work. *Id.* Before the award of the contract, North Bay modified its bid to state that the same subcontractors would only be performing 44% of the project work. *Id.* at 1436. North Bay was eventually awarded the contract. *Id.* at 1437. The second lowest bidder, Valley Crest, petitioned a California trial court for writ of mandate to set aside the City's decision to grant the contract to North Bay. *Id.* The trial court denied the writ. *Id.*

Valley Crest appealed. The appellate court rejected Valley Crest's argument based on the SSFPA, and held that the statute did not prohibit pre-award revisions to the bid that changed the *percentage* of work to be performed by a subcontractors. *Id.* at 1440. The appellate court then reversed the trial court's grant on other grounds, specifically that the requirement in the City's specifications to list subcontractors as performing under 50% of the work was a material element of the bid with which North Bay's contract failed to comply, making the bid nonresponsive and the resulting contract invalid. *Id.* at 1443.

Plaintiffs argue that the *Valley Crest* court's description of Section 4107's operation is evidence that California courts have interpreted it to prohibit pre-award subcontractor substitutions. The court stated the rule in Section 4107 as follows: "Once a subcontractor has been designated, the prime contractor cannot substitute another subcontractor unless the awarding authority consents." *Id.* at 1438. However, the phrase "once a subcontractor has been designated" could reasonably mean "once a subcontractor has been designated [through the award of the contract]"; the language does not necessarily tie the "designation" to the time of the initial bid. More importantly, the *Valley Crest* court did not address the issue of whether Section 4107 prohibited pre-award substitutions of

12

subcontractors. Rather, the court analyzed whether the winning subcontractor's bid was responsive to a material term of the bid solicitation as a matter of contract.

Similarly, cases flagged by Plaintiffs that cite *Valley Crest* do not support its argument for Section 4107's applicability here. In *Golden State Boring*, the appellate court upheld the trial court's denial of a petition by a subcontractor who had been substituted out *after* the award of the contract, where the subcontractor refused to sign the subcontract. *Golden State Boring & Pipe Jacking, Inc. v. Orange County Water Dist.*, 143 Cal. App. 4th 718. *R.J. Land* also involved a post-award substitution. *R.J. Land and Assocs. Construction Co. v. Kiewit-Shea*, 69 Cal. App. 4th 416 (1999). The *Cal-Air* court determined that a prime contractor's "substantial compliance" was sufficient to meet the two-day requirement to substitute a subcontractor for inadvertent clerical error under Section 4107.5, even though the prime contractor did not give written notice to the substituted subcontractor until five days after it submitted its bid. *Cal-Air*, 21 Cal. App. 4th at 668. None of these cases stand for the proposition that Section 4107 prohibits pre-award subcontractor substitutions.

### 3. Legislative History

Plaintiffs also cite to legislative history in support of their interpretation. The original version of the SSFPA noted that the statute was to insure "that competition among subcontractors be completed prior to submission of their bids to the prime contractor . . . ." Opp. at 15-16 (citing A.B. 2037 Reg. Gen. Sess. (Cal. 1963)). However, Plaintiffs themselves acknowledge that this recitation was deleted before passage of the final version of the bill, which, if anything, tends to indicate that California lawmakers considered and then rejected this legislative purpose. That the rest of the language of the bill did not change does not illuminate the legislature's reason for removing the original recitation. *See Oakland-Alameda County Builders' Exch. v. F. P. Lathrop Const. Co.*, 8 Cal. App. 3d 75, 87 Cal. Rptr. 129, 149 (1970), *vacated on other grounds*, *Oakland-Alameda County Builders' Exch. v. F. P. Lathrop Constr. Co.*, 4 Cal. 3d 354 (1971) (discussing the deleted recitation and noting that "[i]t cannot be determined whether the failure to legislate is an approval of preaward bid peddling and bid shopping, or an approval of the right to use self help, short of an unreasonable restraint of trade. It does not elucidate the questions presented by the rules which are reviewed in this case.").

13

### 4. Secondary Sources

Influential secondary sources summarizing California law describe Section 4107 as applying only to post-award substitutions. *See, e.g.*, 42 *California Forms of Pleading and Practice,* § 481.24 (Matthew Bender 2012) (citing *S. California Acoustics* for proposition that pre-award substitution is not prohibited, and stating that "[a]lthough bid shopping and peddling prior to the award of the prime contract foster the same evils, they are not prohibited because they have the effect of passing the reduced costs onto the public in the form of lower prime contract bids"); Miller & Starr, *California Real Estate*, §27:41-42 (3d Ed. 2010) (stating that under the SFFPA*,* "[p]re-award bid shopping and bid peddling are accepted practices and are considered beneficial to the competitive bidding process"). While these secondary sources are not definitive statements of the law, the court notes them here because they suggest that it is understood in the industry and the legal community that Section 4107 is not ordinarily read to cover pre-award substitutions. *See King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 576 n. 5 (9th Cir. 2011) (noting with approval that "[s]everal influential secondary sources adopt [the contested] principle" of law); *accord Burdge v. Belleque*, 290 Fed. Appx. 73, 78 (9th Cir. 2008) (in ineffective assistance of counsel case, "logic, case law, and secondary sources all would have alerted an effective lawyer" to a particular interpretation of a statute).

In sum, the plain meaning of the text and the California Supreme Court's interpretation of that text requires this court to conclude that Section 4107 applies only to post-award subcontractor substitutions.

### B. Motion to Strike Inconsistent Allegations Pursuant to Rule 12(f)

As noted above, the Ninth Circuit has held that a district court may strike a pleading for inconsistency with a prior pleading only by following procedures under Fed. R. Civ. P. 11 for sanctioning a party, and only where the party to be sanctioned acted in bad faith. *PAE Gov't Services*, 514 F.3d at 860. Defendant has not followed procedures for a Rule 11 motion, and Plaintiffs have not had a reasonable opportunity to respond. *See* Rule 11(c)(5) (requiring Rule 11 motions to be filed and served separately). The court therefore denies Defendant's motion insofar as it asks the court to strike portions of the FAC for their inconsistency with allegations in the Original Complaint.

14

### C. Motion to Dismiss Pursuant to Rule 12(b)(6)

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Twombly,* 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 663 (quoting *Twombly,* 550 U.S. at 557). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663 (quotation omitted).

Here, Plaintiffs have failed to allege a central element of a cause of action under Section 4107: that the complained-of subcontractor substitution occurred *after* the contract was awarded to the prime contractor. This omission leaves the court without factual content that allows it to draw the reasonable inference that defendant is liable for the misconduct alleged, and thus Plaintiffs have failed to state a claim upon which relief can be granted. *Iqbal,* 556 U.S. at 663. Defendant's motion to dismiss the Fifth and Sixth Causes of Action is granted, with leave to amend.

The court notes that Plaintiffs' counsel admitted in the Opposition and stated at the March 14, 2013 motion hearing that he had received information from the JPB, a public entity, pursuant to requests made under the California Public Records Act. The information indicated that Plaintiffs had been substituted out of Parsons' Project bid on September 24, 2011, *before* the contract was awarded to Parsons. *See supra* n.1; Opp. at 19, Original Compl. at ¶ 21. It is suspicious that Plaintiffs' counsel obtained public information showing the date of the substitution but nonetheless chose not to allege, and claimed not to know, the date of the substitution. *Iqbal*, 556 U.S. at 663-64 ("Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.") (quotation omitted). However, the court "should freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). *See also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.") (citations omitted). The court therefore declines to prejudge the matter, and instead grants Plaintiffs leave to file a second amended

15

complaint. The court reminds Plaintiffs that "[b]y presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] (3) the factual contentions have evidentiary support or, if specifically so identified, likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b). *See also* Fed. R. Civ. P. 11(c) (authorizing court to impose an appropriate sanction on counsel if it determines counsel has violated Rule 11(b)).

## V. CONCLUSION

For the reasons stated above, the court GRANTS Defendant's motion to dismiss the Fifth and Sixth Causes of Action. Defendant's motion to strike certain allegations in the FAC is DENIED. Plaintiffs are granted leave to amend the FAC to cure the deficiencies stated in this Order. Plaintiffs shall file a Second Amended Complaint by no later than **April 4, 2013**.

IT IS SO ORDERED.

Dated: March 21, 2013

DONNA M. RYU
United States Magistrate Judge